**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

SENECA COUNTY,

                Plaintiff,

v.

3M COMPANY, f/k/a Minnesota Mining and
Manufacturing Co., AGC CHEMICALS AMERICAS
INC., AMEREX CORPORATION, ARKEMA INC.,
ARCHROMA U.S., INC., BASF CORPORATION,
individually and as successor in interest to Ciba Inc.,
BUCKEYE FIRE EQUIPMENT COMPANY,
CARRIER GLOBAL CORPORATION, CHEMDESIGN
PRODUCTS INC., CHEMGUARD INC. CHEMICALS,
INC., CLARIANT CORPORATION, individually and as
successor in interest to Sandoz Chemical Corporation,
CORTEVA, INC., individually and as successor in
interest to DuPont Chemical Solutions Enterprise,
DEEPWATER CHEMICALS, INC., DUPONT DE
NEMOURS INC., individually and as successor in
interest to DuPont Chemical Solutions Enterprise,
DYNAX CORPORATION, E. I. DUPONT DE
NEMOURS AND COMPANY, individually and as
successor in interest to DuPont Chemical Solutions
Enterprise, KIDDE-FENWAL, INC., individually and as
successor in interest to Kidde Fire Fighting, Inc.,
NATION FORD CHEMICAL COMPANY, NATIONAL
FOAM, INC., THE CHEMOURS COMPANY,
individually and as successor in interest to DuPont
Chemical Solutions Enterprise, THE CHEMOURS
COMPANY FC, LLC, individually and as successor in
interest to DuPont Chemical Solutions Enterprise, and
TYCO FIRE PRODUCTS, LP, individually and as
successor in interest to The Ansul Company, and DOE
DEFENDANTS 1-20, fictitious names whose present
identities are unknown.

                Defendants.

Civil Action No. 6:21-cv-6672

**NOTICE OF REMOVAL**

**JURY TRIAL DEMANDED**

       Defendant 3M Company, by and through undersigned counsel, hereby gives notice of the

removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Supreme Court of

the State of New York, Seneca County, to the United States District Court for the Western District of New York.  As grounds for removal, 3M alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiff Seneca County seeks to hold 3M and certain other Defendants liable based on their alleged conduct in designing, manufacturing, and/or selling aqueous film-forming foams ("AFFF") that Plaintiff alleges were used at the Seneca Army Depot and thereby contaminated Seneca County's water system.

2.       Specifically, Plaintiff alleges that per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), were contained in Defendants' AFFF, that these substances were released into the environment in New York, and that these same substances appeared in Plaintiff's water supply.

3.      Plaintiff expressly alleges that the contamination of its water was caused by AFFF used at Seneca Army Depot.  AFFF sold to the U.S. military must appear on the Department of Defense ("DoD") Qualified Products List and comply with the military's rigorous specifications ("MilSpec").  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies. Corp.*, 487 U.S. 500 (1988), 3M is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442, 3M is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4.      This action was filed on October 7, 2021 in the Supreme Court of New York, Seneca County, bearing Index No. 20210453. (Ex. A, Summons and Complaint.)  Venue is proper in this Court pursuant to 28 U.S.C. §§ 112(d) and 1441(a) because the Supreme Court of New York, Seneca County, is located within the Western District of New York.

5.      Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days of the service upon 3M of the initial pleading. Plaintiff has not served 3M as of this date. Accordingly, removal is timely.

6.      3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1).  *See, e.g., Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

7.      Plaintiff generally alleges that Defendants, including 3M, have designed, manufactured, marketed, distributed, and/or sold AFFF products and/or fluorinated surfactants used therein, which contain PFAS, including PFOS, PFOA, and/or their precursors.  (Compl. ¶¶ 4–6, 127–38.)  Plaintiff alleges that these AFFF products were sold to and used by the United States Army, including at Seneca Military Depot, and subsequently were released into the environment, purportedly resulting in "the presence of PFAS at the [sic] Seneca Lake." (*Id.* ¶ 18.)  Plaintiff also alleges that "[s]ince the 1970s, the Army has been using Aqueous Film Forming Foam (AFFF)," that "[i]n April 2018, the Army identified the Seneca Army Depot, located at Romulus, New York, as a 'Groundwater location with levels of PFOS/PFOA above the EPA LHA,'" and that the alleged

contamination of Seneca Lake "is due to the use of AFFF foams at the Seneca Army Depot, that migrated through the ground and groundwater into the [sic] Seneca Lake." (*Id.* ¶¶ 7, 15, 18.)

8.      Plaintiff asserts claims against all Defendants, including 3M, for defective design (*id.* ¶¶ 212–21), failure to warn (*id.* ¶¶ 222–28), negligence (*id.* ¶¶ 229–38), trespass (*id.* ¶¶ 239–44), public nuisance (*id.* ¶¶ 261–71), and private nuisance (*id.* ¶¶ 272–80).  Plaintiff asserts claims against Defendants DuPont, Chemours Co., Chemours FC, Corteva, and DuPont de Nemours, Inc. only for violation of the Uniform Fraudulent Conveyance Act (*id.* ¶¶ 245–56) and against DuPont and Chemours Co. only for actual and constructive fraudulent transfer (*id.* ¶¶ 281–96).  Plaintiff also asserts theories of market share liability, alternative liability, concert of action, and enterprise liability against all Defendants (*id.* ¶¶ 208–11), and seeks punitive damages from all Defendants (*id.* ¶¶ 257–60 & 297–300).

9.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and for other Defendants, and a copy is being filed with the Clerk of the Supreme Court of New York, Seneca County.

10.     By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

11.     3M reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442

12.     Removal here is proper under the federal officer removal statutes, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing

defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's directions, have a causal nexus with or are otherwise related to plaintiff's claims or injuries; and (d) it can assert a "colorable" federal defense.  *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

13.    Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."  *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office."  *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)."  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, § 1442 as a whole must be "liberally construed" in favor of removal.  *Isaacson*, 517 F.3d at 136.

14.    All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against 3M and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to

MilSpec AFFF[,] . . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against 3M and other AFFF manufacturers).  The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused at least in part by MilSpec AFFF.  *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6.  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

A.    **MilSpec AFFF**

15.    Since the late 1960s or early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted an AFFF-related patent in 1966.[2]  Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

---

[1] Following removal, 3M intends to designate this action for transfer to the MDL.

[2] *See* U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

16.     The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command.   The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.   Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]   The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.   After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

17.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.   This requirement has been in force for virtually the entire time period at issue in the Complaint.   And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short

---

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

term."  PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

18.     Plaintiff alleges that the use of AFFF by the U.S. Army, including at the Seneca Army Depot, resulted in "widespread PFAS contamination."  (Compl. ¶ 6.)  Plaintiff alleges that "PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain."  (*Id.* ¶ 3.)  Plaintiff also alleges that "the presence of PFAS at the [sic] Seneca Lake is due to the use of AFFF foams at the Seneca Army Depot, that migrated through the ground and groundwater into the [sic] Seneca Lake."  (*Id.* ¶ 18.)

**B.     All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

> *1.     The "Person" Requirement Is Satisfied*

19.     The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) is a "person" under the statute.  For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships."  *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135–36.

> *2.     The "Acting Under" Requirement Is Satisfied*

20.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer.  *Papp*, 842 F.3d at 812.  "The words 'acting under' are to be interpreted broadly . . . ."  *Isaacson*, 517 F.3d at 136 (citation omitted).  Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency."  *Papp*, 842 F.3d at 813.

8

21.    The requirement of "acting under" federal office is met here because Plaintiff's claims, at least in part, challenge 3M's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself.  *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "lifesaving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[7]  Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF.  *See Nessel*, 2021 WL 744683, at *3 (holding that 3M and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same).  If 3M and other manufacturers did not provide MilSpec AFFF for use at military bases, the government would have to manufacture and supply the product itself.

22.    In designing, manufacturing and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers.  Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

9

govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

### 3.    *The Causation Requirement Is Satisfied*

23.    The third requirement, that the defendant's actions taken "under color of federal office" have a causal nexus with or otherwise related to plaintiff's claims or injuries, erects a hurdle that "is quite low."   *Isaacson*, 517 F.3d at 137.[9]   To satisfy this requirement, a defendant need only establish that an act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties.  *Id.* at 137–38.

24.    Here, the Plaintiff's claims arise at least in part from 3M's production and sale of AFFF manufactured to military specifications for use at military facilities.  Plaintiff alleges that the use of PFAS in AFFF is the source of its injuries.  3M contends that the use of such chemicals in MilSpec AFFF was required by military specifications.  The conflict is apparent: MilSpec AFFF was developed by 3M and other manufacturers to meet specifications established by the DoD. Military installations are required to employ MilSpec AFFF.  The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which 3M could not comply with both the MilSpec and the purported state-prescribed duty of care.  *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims [3M]

---

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

manufactured and sold, and for which the U.S. military imposes MilSpec standards.  The Court . .
. finds that the causation element of federal officer removal is satisfied here.”); MDL Order 2, at
5 (finding the causation element of federal officer removal satisfied where 3M’s AFFF products,
“for which the military imposes MilSpec standards,” were used at several Part 139 airports); MDL
Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

25.     Here, Plaintiff’s purported injuries arise at least in part from MilSpec AFFF.  The
causal connection between Plaintiff’s alleged injuries and 3M’s actions under color of federal
office thus is clear.  It is irrelevant that the Plaintiff does not expressly contend that it has been
injured by MilSpec AFFF.  Courts “credit Defendants’ theory of the case when determining
whether [the] causal connection exists.”  *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL
744683, at *3 (noting that “Plaintiffs cannot decide what defense Defendants might present”).

4.     *The “Colorable Federal Defense” Requirement Is Satisfied*

26.     The fourth requirement (“colorable federal defense”) is satisfied by 3M’s assertion
of the government contractor defense.

27.     At the removal stage, a defendant need only show that its government contractor
defense is colorable; that is, “that the defense was ‘legitimate and [could] reasonably be asserted,
given the facts presented and the current law.’”  *Papp*, 842 F.3d at 815 (alteration in original)
(citation omitted).  “A defendant ‘need not win his case before he can have it removed.’”  *Id.*
(quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 (“To be ‘colorable,’ the
defense need not be ‘clearly sustainable,’ as the purpose of the statute is to secure that the validity
of the defense will be tried in federal court.” (citation omitted)).  At the removal stage, the inquiry
“is purely jurisdictional, and neither the parties nor the district courts should be required to engage
in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue.”

11

*Cuomo*, 771 F.3d at 116.[10]   Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

28.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

29.     3M has satisfied these elements for purposes of removal.  As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  3M's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the

---

[10] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to 3M); MDL Order 3, at 5 (same); *see also Nessel*, 2021 WL 744683, at *4.

30.     Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.  Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[11]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[12]  By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to

---

[11] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002) (excerpt).

[12] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[13]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[14]  *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

31.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation

---

[13] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[14] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

32.    3M's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on 3M for alleged injuries to Plaintiff that were caused in whole or in part by 3M's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military.  The government contractor defense precludes such an attack.  *See Boyle*, 487 U.S. at 509.

WHEREFORE, 3M hereby removes this action from the Supreme Court of the State of New York, Seneca County, to this Court.

RESPECTFULLY SUBMITTED this 2nd day of November, 2021.

By: */s/ Jarman D. Russell*_____
Jarman D. Russell
1221 Avenue of the Americas
New York, New York 10020
T: +1 212 506 2500
F: +1 212 262 1910
jrussell@mayerbrown.com

*Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I certify that on November 2, 2021, I caused a true and correct copy of the foregoing

**NOTICE OF REMOVAL**, with its Exhibits, to be served on the following parties by First Class

Mail:

| | |
|---|---|
| Patrick J. Lanciotti, Esq.<br>360 Lexington Avenue, 11th Fl.<br>New York, New York 10017<br>(212) 397-1000<br>PLanciotti@napolilaw.com<br><br>Paul J. Napoli, Esq.<br>270 Muñoz Rivera Ave., Suite 201<br>Hato Rey, Puerto Rico 00918<br>(833) 271-4502<br>pnapoli@nsprlaw.com<br><br>*Counsel for Plaintiff*<br><br>AGC Chemicals Americas<br>55 East Uwchlan Avenue, Suite 201<br>Exton, PA 19341<br><br>Amerex Corporation<br>7595 Gadsden Highway<br>Trussville, AL 35173<br><br>Arkema Inc.<br>900 1st Avenue<br>King of Prussia, PA 19406<br><br>Archroma Management LLC<br>Neuhofstrasse 11<br>4153 Reinach, Basel-Land<br>Switzerland<br><br>BASF Corporation<br>100 Park Avenue<br>Florham Park, NJ 07932 | Buckeye Fire Equipment Company<br>110 Kings Road<br>Mountain, NC 28086<br><br>Carrier Global Corporation<br>13995 Pasteur Boulevard<br>Palm Beach Gardens, FL 33418<br><br>Chemdesign Products, Inc.<br>2 Stanton Street<br>Marinette, WI 54143<br><br>Chemguard Inc.<br>One Stanton Street<br>Marinette, WI 54143<br><br>Chemicals, Inc.<br>12321 Hatcherville Road<br>Baytown, TX 77521<br><br>Clariant Corporation<br>4000 Monroe Road<br>Charlotte, NC 28205<br><br>Corteva, Inc.<br>974 Centre Road<br>Wilmington, DE 19805<br><br>Deepwater Chemicals, Inc.<br>196122 County Road 40<br>Woodward, OK 73801<br><br>DuPont de Nemours Inc.<br>974 Centre Road<br>Wilmington, DE 19805<br><br>Dynax Corporation<br>103 Fairview Park Drive |

| | |
|---|---|
| | Elmsford, NY 10523<br><br>E.I. DuPont De Nemours & Company<br>974 Centre Road<br>Wilmington, DE 19805 |
| Kidde-Fenwal, Inc.<br>One Financial Plaza<br>Hartford, CT 06101<br><br>Nation Ford Chemical Co.<br>2300 Banks Street<br>Fort Mill, SC 29715 | National Foam, Inc.<br>141 Junny Road<br>Angier, NC 27501<br><br>The Chemours Company LLC<br>1007 Market Street<br>Wilmington, DE 19899<br><br>The Chemours Company FC, LLC<br>1007 Market Street<br>Wilmington, DE 19899<br><br>Tyco Fire Products, LP<br>204 S 6th Ave<br>Mansfield, TX 76063<br><br>*Defendants.* |

/s/ Jarman D. Russell_____
Jarman D. Russell